NOT FOR PUBLICATION                                                                                   CLOSED

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|   |   |
|---|---|
| GERALD R. SHARPE, JR., and NICHOLAS D'AMICO : : | |
| Plaintiff, : | Civil Action No. 07-1897 (JAP) |
| v. : | **OPINION** |
| DAVID E. ROBBINS, ESQ. and KAUFMAN, FEINER, YAMIN, GILDIN & ROBBINS, LLP : : : | |
| Defendants. : | |

Currently before the Court is Defendants' motion for summary judgment. For the reasons set forth below, Defendants' motion for summary judgment is granted.

**I. Background**

The Court finds that the following facts are supported by the evidence of record and are undisputed:[1]

Gerald Sharpe, Jr. and Nicholas D'Amico (collectively "Plaintiffs") previously operated a securities brokerage business called First Montauk. In the Spring of 2004, Plaintiffs observed a change of management and became concerned about the future of the company. As such, Plaintiffs began to interview with different brokerage houses in the hopes that they could form a new business

---

[1] These facts are derived from Defendant's Local Rule 56.1 Statement of Material Facts Not in Dispute ("Defs.' Rule 56.1 Stmt.") and exhibits specifically referenced. Plaintiffs neither responded to Defendants' Rule 56.1 Statement nor submitted their own. Accordingly, the Court adopts Defendants' Rule 56.1 Statement because "facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted." *Hill v. Algor*, 85 F. Supp. 2d 391, 408 n.26 (D.N.J. 2000).

relationship. Plaintiffs successfully negotiated a deal with Franklin Michelin ("Michelin"), President of L.H. Ross ("LHR"), a brokerage firm based in Florida. As part of the deal, LHR offered Plaintiffs a two-million dollar signing bonus.

Plaintiff, Sharpe, directly negotiated the deal and the signing bonus with Michelin without the assistance of counsel. By letter dated March 18, 2004, Sharpe proposed that "[LHR] will provide Sharpco International a two-million dollar signing bonus to become an affiliate of [LHR]. The first million dollars will be due immediately upon the registration of the owners of Sharcpo Intl" while the remainder was to be paid in installments. (Decl. Marshall Bilder ("Bilder Decl."); Exh. J). Over the course of negotiations, the signing bonus was structured as a loan to be forgiven over a five-year period. (Bilder Decl.; Exh. C, 185:16-20.) This condition carried through to the final agreement of the parties. (Bilder Decl.; Exh. C, 124:17-125:19; Exh. E., 1.)

In late March 2004, Plaintiffs retained Defendant, David Robbins ("Robbins"), a securities attorney, to review the documents that Sharpe had personally negotiated with LHR. Additionally, although not requested by Plaintiffs, Robbins conducted an "NASD Broker Check" of LHR which revealed alleged violations of securities laws by LHR. Robbins communicated this information to Plaintiffs who decided to move forward with the transaction anyway. (Bilder Decl.; Exh. C; 80:8-19.)

Although Robbins reviewed the documents, he did not directly communicate with anyone from LHR and did not negotiate the terms. Of particular importance to the instant litigation, was a document called the Terms Agreement which provided for the two-million dollar signing bonus that was structured in the form of a forgivable loan. Sharpe testified that structuring the signing bonus as a forgivable loan was his idea but that Robbins reviewed the agreement. (Bilder Decl.; Exh. C,

185:16-20.) Sharpe further testified that he was familiar with the forgivable loan concept and understood it to be a "common way of doing things" in the industry. (Bilder Decl.; Exh. C at 53:7 to 54:18-55:21).

On June 14, 2004, the parties executed the Terms Agreement, the OSJ Agreement (this agreement was executed simultaneously with the Terms Agreement and contained additional terms regarding the parties anticipated relationship) and other related documents. Sharpe then converted his First Montauk office into an LHR branch. In turn, LHR promptly paid Plaintiffs the first one-million dollar installment of their signing bonus. Although Plaintiffs were contractually obligated to maintain effective securities licenses, their licenses were placed on "pending" status when they joined LHR. Approximately five months later, Plaintiffs left LHR, after an alleged dispute, and joined Newbridge Securities. Shortly thereafter, LHR invoked an NASD arbitration clause under the Terms Agreement. LHR argued that Plaintiffs reneged on their deal and accordingly sought the return of the one-million dollar portion of the signing bonus. Specifically, LHR asserted various breach of contract claims including breach of the condition that Plaintiffs maintain effective securities licenses.

Plaintiffs hired Robbins and his firm to represent them in the arbitration proceedings with LHR. Robbins counterclaimed on Plaintiffs' behalf, asserting that LHR breached their contract and that Plaintiffs were the victims of LHR's misrepresentations. Accordingly, they sought the remaining one-million owed as a signing bonus. In July 2006, a three-member arbitration panel ruled in favor of LHR and directed Plaintiffs to pay $913, 333.40 in damages to LHR and denied their counterclaims. The arbitration panel did not provide an explanation for its decision. On appeal of the arbitrators' decision, Plaintiffs and LHR reached a settlement of $600,000. Plaintiffs currently

owe Defendants $42,059.54 for legal services but have allegedly refused to pay to date.

On February 21, 2007, Plaintiffs filed a legal malpractice action against Defendants in the Superior Court, Law Division, Monmouth County claiming that they would have received a more favorable outcome in the arbitration proceedings if Robbins had included different provisions in the agreement that Plaintiffs negotiated directly with LHR. Specifically, Plaintiffs argue that the agreement did not contain a clause that would have allowed them to retain the signing bonus in the event that LHR defaulted on the agreement.[2] The matter was subsequently removed to this Court on April 23, 2007 and Defendants filed a counterclaim for the unpaid legal bills on May 14, 2007.

In support of their legal malpractice claim, Plaintiffs rely on expert testimony provided by Ira Starr ("Starr"). In a report dated July 14, 2008, Starr concluded that

> [Robbins] in no meaningful way counseled clients on the risks inherent in transferring the client's business to a 'shady' enterprise such as LHR. Equally egregious, is that he in no way protected them from the very real risks of regulatory and disciplinary actions against LHR of which he was fully aware. He failed to address the possibility, fully known to him, that these regulatory problems would cause LHR to fail and a direct consequence of his failure to fully advise his clients of the real risks was that the Plaintiffs urged the deal to go forward with the resulting loss to them of the commission revenues they would have earned had they remained at Montauk or moved to a firm other than LHR. Similarly, in his review of the deal documentation, Robbins failed to address some of the most basic elements of a commercial practice including the insertion of customary clauses designed to protect the client in the event of LHR's default.
>
> Robbins failed to adequately inform and prepare the clients with respect to: (a) the risks of the upfront payment being characterized as a loan; and (b) the risks of affiliating with LHR and his failure to include the requisite provisions in the Terms Agreement was the direct and proximate cause of the Plaintiff's damages arising from the NASD arbitration which they eventually settled by payment to the Assignee of $600,000.

---

[2]Based on the Court's understanding of the facts, Plaintiffs do not contend that Robbins was negligent in representing them at the arbitration proceeding. Rather, Robbins alleged legal malpractice arises out of his role in reviewing the agreement between Plaintiffs and LHR.

4

(Bilder Decl., Exh. M, p. 9.)

On January 23, 2009, Defendants moved for summary judgment arguing (1) that Plaintiffs' expert testimony, provided by Ira Starr, lacks foundation and (2) that Plaintiffs cannot establish proximate cause. (Defs.' Opening Br. p. 15.) The Court held oral argument on May 8, 2009.

## II.  Legal Analysis

### A.  Standard of Review

A court shall grant summary judgment under Federal Rule of Civil Procedure 56(c) "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are critical or "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine fact issue compels a trial. *Id.* at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial. *Anderson*, 477 U.S. at 249. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact

exists, then the Court must grant summary judgment. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993).

### B.  *Plaintiffs' Expert Testimony*

In legal malpractice cases, expert testimony is required to establish the requisite standard of care. *Gans v. Mundy*, 762 F.2d 338, 343 (3d Cir. 1985); *Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474, 480-83 (3d Cir. 1979); *Cellucci v. Bronstein*, 277 N.J. Super. 506, 524 (App. Div. 1994) ("A lawyer's liability for malpractice cannot be established on an expert's premise of I know it when I see it. It has to be premised on recognized standards of care that repose liability for deviations from those standards."). Federal Rule of Evidence 702 governs expert testimony and states in relevant part:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

An expert's opinion, however, must be supported by the factual evidence and not based solely on the expert's conclusions. *D&D Associates, Inc. v. The Bd. of Educ. of N. Plainfield*, 411 F. Supp. 2d 483, 488 (D.N.J. 2006). Moreover, the expert's report must be based on "generally accepted, objective standards of practice" in the legal community rather than the expert's personal views. *Koruba v. Am. Honda Motor Co.*, 396 N.J. Super. 517, 526 (App. Div. 2007), *cert. denied*, 194 N.J. 272, 944 A.2d 32 (2008). Furthermore, in professional negligence cases, the plaintiff's expert must provide "some evidential support . . . establishing the existence of the standard" of care. *Taylor v. DeLosso*, 319 N.J. Super. 174, 180 (App. Div. 1999); *Kaplan v. Skoloff & Wolfe*, 339 N.J.

Super. 97, 103 (App. Div. 2001) (finding an expert report inadmissible as a net opinion because the expert failed to reference any document or custom accepted by the legal community). Finally, in order for an expert opinion "to have any bearing on the appropriateness of summary judgment, it must create a genuine issue of material fact." *Brill v. Guardian Life Ins. Co. of Am.*, 142 N.J. 520, 544 (1995) (citing *Ziemba v. Riverview Medical Center*, 275 N.J. Super. 293, 301-03 (App. Div. 1994)).

Here, the Court finds that Plaintiffs' expert opinion to be inadmissible as a net opinion. Starr, Plaintiffs' expert, testified that he was unfamiliar with the manner in which the legal community dealt with signing bonuses in the context of the brokerage industry. (Bilder Decl., Exh. I, 84:10-17.) Furthermore, Starr conceded that he did not know whether it was common in the industry to structure signing bonuses according to the terms that he considered to be proper and he did not provide any evidence demonstrating that his terms were considered to be the industry standard. (*Id.* at 122:24-123:3).

However, Starr did state that it was customary to include a "representation that LHR was not the subject of any disciplinary proceedings or regulatory actions which could make its performance under the Terms Agreement impossible." (Bilder Decl., Exh. M, p. 4.) In his report, he claimed that this representation was absent. However, the Court finds that this representation was indeed present in the OSJ Agreement, which was simultaneously executed with the Terms Agreement. The provision states, in relevant part: "<u>Compliance with the Law and Other Instruments</u>. The business and operations of the Company [LHR] have been and are being conducted in all material respects in accordance with all applicable laws, rules and regulations of all authorities which affect the Company or its properties, assets, businesses or prospects . . ." (Bilder Decl., Exh. F, p. 4, ¶ 9C.)

Starr's deposition testimony reflects that he did not consider the OSJ Agreement because he did not know that it existed.[3] (Bilder Decl., Exh. I, 77:25-78:6.) Because Starr did not consider the OSJ Agreement, it does not create a genuine issue of material fact worthy of defeating Defendants' motion for summary judgment. *See Brill*, 142 N.J. at 544 (court denied summary judgment because expert's report regarding liability was "based on a factually inaccurate and unjustifiable assertion.") As such, for the reasons stated above, the Court finds Starr's opinion to be inadmissible.

### C. Proximate Cause

In legal malpractice cases, the Plaintiff must prove that his losses were proximately caused by the lawyer's negligence. *Lamb v. Barbour*, 188 N.J. Super. 6, 12 (App. Div. 1982). Specifically, in transactional legal malpractice claims:

> [T]here must be evidence to establish that the negligence was a substantial factor in bringing about the loss of a gain or benefit from the transaction. Where . . . a plaintiff alleges that he suffered a loss in a particular transaction because an attorney failed to take steps to protect his interest, the plaintiff must present evidence that, even in the absence of negligence by the attorney, the other parties to the transaction would have recognized plaintiff's interest and plaintiff would have derived a benefit from it.

*Froom v. Perel*, 377 N.J. Super. 298, 315 (App. Div. 2005); *see also 2175 Lemoine Ave. v. Finco, Inc.*, 272 N.J. Super. 478, 487-90 (App. Div. 1994) (concluding that plaintiff had not established proximate cause because plaintiff did not present sufficient evidence demonstrating that the other parties to the transaction were willing to structure the agreement according to plaintiff's desire). Furthermore, proximate cause must be based on competent credible evidence and cannot be

---

[3]Starr's deposition testimony states in relevant part:
Q: By the way, what agreements do you understand existed between LHR and the plaintiffs?
A: The – ultimately the only agreement I believe was the – terms agreement.
Q: You're not familiar with any other agreement?
A: I'm not familiar with any other agreement.

established by "conjecture, surmise or suspicion." *2175 Lemoine Ave.,* 272 N.J. Super. at 488 (citing *Long v. Landy*, 35 N.J. 44, 54 (1961)).

Applying the standards articulated above, the Court finds that Plaintiffs are unable to establish that their injuries were proximately caused by Robbins' review of the contract. Plaintiffs argue that the structure of the signing bonuses as a forgivable loan, and not as a non-refundable bonus, allowed LHR to recoup a portion of the bonus in the arbitration proceeding. However, there is no evidence that LHR would have agreed to structure the signing bonus in a non-refundable form. In fact the record reflects that LHR considered the loan to be "premised upon the [Plaintiffs] performing the agreed upon services, the [Plaintiffs] did not perform such services." (Bilder Decl., Exh. G, ¶ 2.) LHR further stated that "the structure of the bonus/loan was specifically formulated in an attempt to secure LHR the benefit of its bargain and to prevent [Plaintiffs] from taking LHR's money without providing the agreed upon services. Consequently, LHR agreed to provide the funds only in several installments after the [Plaintiffs'] effective registration with LHR and, presumably, performing services for LHR's benefit." (*Id.* ¶ 32.) Plaintiffs did not present evidence that LHR would have structured the signing bonus as a non-refundable bonus. Moreover, since the arbitrators did not provide an explanation for their decision, the Court would have to speculate to conclude that their decision was based on Robbins' alleged negligence. Accordingly, Plaintiffs have not produced any competent, credible evidence of proximate cause. *2175 Lemoine Ave.,* 272 N.J. Super. at 488.

**III. Conclusion**

      For the reasons stated above, Defendants' motion for summary judgment is granted.[4]  An appropriate Order accompanies this Opinion.


Dated: June 23, 2009

                                                 /s/ JOEL A. PISANO
                                                 United States District Judge

---

[4]Although the issue of unpaid legal fees is not before the Court at this time, given the disposition of this motion, it seems appropriate that Defendants would be entitled to their unpaid legal fees.