**GLENN A. BERGENFIELD, P.C.**
212 Carnegie Center, Suite 102
Princeton, New Jersey  08540
Glenn A. Bergenfield, Esq. (GB-0032)
GBergenfield@gmail.com
(609)951-0088
Attorney for Plaintiffs,
Gerald R. Sharpe, Jr. and Nicholas D'Amico

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GERALD R. SHARPE, JR., and NICHOLAS D'AMICO | : | CIVIL ACTION NO: 3:-7-CV-1897 (JAP)(TJB) |
| | : | Hon. Joel A. Pisano |
| Plaintiffs/Appellants | : | |
| | : | |
| vs. | : | |
| | : | |
| DAVID E. ROBBINS, ESQ. and KAUFMAN, FEINER, YAMIN, GILDIN & ROBBINS, LLP | : | |
| | : | |
| Defendants/Respondents | : | |

## NOTICE OF APPEAL FROM A JUDGMENT OR ORDER
## OF A DISTRICT COURT PURSUANT TO F.A.P. 3

TO:   Clerk, United States District Court
      MLK Jr. Federal Court House & Post Office Building
      50 Walnut Street
      Newark, New Jersey  07102

ON NOTICE TO:

      Marshall Bilder, Esq.
      Sterns & Weinroth
      50 West State Street
      Post Office Box 1400
      Trenton, New Jersey  08607
      Attorney for Defendant/Respondents
      mbilder@sternslaw.com

SIRS:

NOTICE is hereby given that the Plaintiffs in the above-entitled action, Gerald R. Sharpe Jr. and Nicholas D'Amico, hereby appeal to the United States Court of Appeals for the Third Circuit, from the Order and Opinion of the Honorable Joel A. Pisano dated June 23, 2009 and the Amended Order of the Honorable Joel A. Pisano dated June 24, 2009 granting summary judgment against the Plaintiffs, Gerald R. Sharpe, Jr. and Nicholas D'Amico, and in favor of the Defendants, David E. Robbins, Esq. and Kaufman, Feiner, Yamin, Gildin & Robbins, LLP.

GLENN A. BERGENFIELD

Dated: June 24, 2009

**GLENN A. BERGENFIELD, P.C.**
212 Carnegie Center, Suite 102
Princeton, New Jersey 08540
Glenn A. Bergenfield, Esq. (GB-0032)
GBergenfield@gmail.com
(609)951-0088
Attorney for Plaintiffs,
Gerald R. Sharpe, Jr. and Nicholas D'Amico

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GERALD R. SHARPE, JR., and NICHOLAS D'AMICO | : | CIVIL ACTION NO: 3:-7-CV-1897 (JAP)(TJB) |
| | : | Hon. Joel A. Pisano |
| Plaintiffs/Appellants | : | |
| vs. | : | |
| DAVID E. ROBBINS, ESQ. and KAUFMAN, FEINER, YAMIN, GILDIN & ROBBINS, LLP | : | |
| Defendants/Respondents | : | |

## STATEMENT OF THE RECORD PURSUANT TO FAP 10(A) AND CORRECTION OR MODIFICATION OF THE RECORD PURSUANT TO FAP 10(E)(2)

GLENN A. BERGENFIELD, of full age, hereby certifies as follows:

1.     I am an attorney at law of the State of New Jersey admitted to practice in the United States District Court for the District of New Jersey.  I am the attorney for the Plaintiffs/Appellants in the within action.

2.     The following documents constitute the record which was submitted to the Court in connection with the summary judgment application that forms the basis of the decision of the Court dated June 23, 2009:

Defendants Notice of Motion for Summary Judgment

Defendant's Brief in Support of Motion for Summary Judgment

Defendant's Statement of Material Facts not in Dispute

Declaration of Marshall D. Bilder, Esq.
  Exhibit A:  Complaint
  Exhibit B:  Answer, Separate Defenses and Counterclaim
  Exhibit C:  Portions of Deposition Transcript of Gerald Sharpe dated 5/15/08
  Exhibit D:  Portions of Deposition Transcript of Gerald Sharpe dated 6/18/08
  Exhibit E:  Terms Agreement
  Exhibit F:  OSJ Agreement
  Exhibit G:  Statement of Claim of L.H. Ross & Company
  Exhibit H:  NASD Dispute Resolution Award
  Exhibit I:  Portions of Deposition Transcript of Ira Starr dated 11/13/08
  Exhibit J:  March 18, 2004 Letter Proposal
  Exhibit K:  Defendant's Bills to Plaintiffs
  Exhibit L:  Portions of Deposition Transcript of Nicholas D'Amico dated 7/21/08
  Exhibit M:  Expert Report of Ira Starr, Esq. dated 7/14/08

Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment

Certification of Gerald Sharpe, Jr.

Certification of Glenn A. Bergenfield, Esq.
  Exhibit A:  Deposition of David Robbins, Esq. dated 2/19/08
  Exhibit B:  Deposition of Gerald R. Sharpe dated 5/15/08

Defendant's Reply Brief in Support of Motion for Summary Judgment

  3.  Pursuant to F.A.P. 10(e)(2), we seek to modify the record to include the

Plaintiff's Statement in Response to the Defendant's Statement of Undisputed Material

Facts.

  4.  Attached hereto is Plaintiff's Statement in Response to the Defendant's

Statement of Material Facts (with proof of its date of creation). For unknown reasons, this

statement, which was a part of the opposition papers of the Plaintiffs was not received by

or considered by the Court in deciding the summary judgment. We seek to correct the

record so that this Statement is included in the record. The information contained therein

is also reiterated in the Certification of Gerald R. Sharpe, Jr.   We have also written to Judge

Pisano requesting an amendment of the factual findings pursuant to Rule 52(b) which is

also attached hereto.

     5.     We believe this document may have been excluded from Plaintiff's electronic

filing as it may have been attached in word format and not PDF format.

GLENN A. BERGENFIELD

Dated:  June 25, 2009

**GLENN A. BERGENFIELD, P.C.**
212 Carnegie Center, Suite 102
Princeton, New Jersey  08540
Glenn A. Bergenfield, Esq. (GB-0032)
(609)951-0088
Attorney for Plaintiffs, Gerald R. Sharpe, Jr. and
       Nicholas D'Amico

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GERALD R. SHARPE, JR., and<br>NICHOLAS D'AMICO | : | CIVIL ACTION NO:<br>3:-7-CV-1897 (JAP)(TJB) |
| Plaintiffs | : | |
| vs. | : | |
| | : | **DOCUMENT FILED** |
| DAVID E. ROBBINS, ESQ. and KAUFMAN,<br>FEINER, YAMIN, GILDIN & ROBBINS, LLP | : | **ELECTRONICALLY** |
| Defendants | : | |

---

### RESPONSE TO DEFENDANT'S STATEMENT OF
### UNDISPUTED MATERIAL FACTS

1.     Admit the general point.  The plaintiffs were concerned that the change in management for First Montauk meant that things might not be going so well at First Montauk.  The plaintiffs had heard rumors.  But they denied being desperate or anxious or fearful. (Defendant's Exhibit C at page 58 – 63).

2.     Admit.

3.     Admit that the March 18, 2004 Letter of Intent was written by the parties to the contract and not the lawyers.  It was, however, superseded by the final written contracts, "The Terms Agreement" and "The OSJ Agreement" which were

1

reviewed by Defendant, Robbins.  The March 18 letter is now parole evidence offered by the defendant to modify the written contract that succeeded it.

4.    Deny as stated.  Robbins was hired to protect plaintiffs' business and legal interests in the contemplated move to LH Ross.  "I asked Mr. Robbins to make sure that I was protected in the contract."    (Plaintiffs' Exhibit B - Sharpe deposition at T186-24).  Robbins was not limited to reviewing the March 18, 2004 letter or in any other way.  Robbins participated in the drafting and review of the 2 contracts that would memorialize the transaction, the "Terms Agreement" and the "OSJ Agreement."

5.    Admit.

6.    Admit.

7.    Deny as stated.  Sharpe testified that he was only concerned with the payout and that Robbins was responsible for the rest.  (Plaintiff's Exhibit B – Sharpe Deposition at T102-1 to 24).

    A.    Listen, I'm no lawyer and I don't know how to review that contract or the OSJ agreement.  But I do know what I want and what payout I want and how I want to get paid.  That's the only thing I negotiated.  The rest is legal jargon.  I don't even understand it.
    Q.    Right.  Back to my question.  I'm just trying to figure out mechanics.  A lot of questions on the substance.  I want the mechanics.  Is it accurate, the picture I get by looking at the documents is that Mr. Robbins was never face front with L.H. Ross.  In other words, you give him a document.  He would review it. You would get it back. You would give it to L.H. Ross.  Is that how it played out?
    A.    Yes.
    Q.    And you're saying it was done that way for no particular reason other than you feel that's how its ordinarily done.
    A.    They would hand me the contract and I would check it with my lawyer.  My lawyer would make changes and I would give it back – I would read over the changes and I would send it back.

2

8.    Admit but this point is poorly expressed and confusing.  The June 14, 2004 "Terms Agreement" superseded the March 18, 2004 Letter of Intent.  Under "Up Front Monies" it called the $2,000,000 a "signing bonus."  But it also called it the bonus a "loan" pursuant to a "forgivable promissory note."  And in that is the problem of this case.

9.    Admit.  Sharpe testified that the "loan" language was added by Sharpe and D'Amico to what was otherwise an earned, non-refundable signing bonus. Sharpe's accountant suggested the addition of this language so that the bonus would get more advantageous tax treatment, not so that Sharpe and D'Amico would have to pay it back after they had made the move.  It was not LH Ross that sought this change; the language was not put in to protect LH Ross but to gain advantageous tax treatment for Sharpe and D'Amico.  It is admitted that Robbins "did not create or recommending [sic] this change."  In fact, it seems Robbins *never* expressed to his client anything about the addition of the loan language, including the possibility that calling it a "loan" meant that it, like other loans, would have to be paid back; and this is what we think is his malpractice.  (See expert report of Ira Starr, Defendant's Exhibit M).

10.   Admit.

11.   Admit.

12.   Admit all except the last 2 words, "signing bonus."  Sharpe thought it was a "signing bonus" of $1,000,000 that was being paid but the arbitration proved that it was a "loan" that had to be paid back.

13.   Deny. It was not a dispute that developed. Michelin, the owner of LH Ross, had been caught in a sting, paying money to an FBI agent, in violation of the securities laws and he was going to jail. As Robbins' defense counsel put it at Sharpe's deposition: (Plaintiff's Exhibit B – Sharpe Deposition at T205-7 to 15)

> Q.   But the arbitrators knew Michelin was a bad dude, right?
> A.   Yeah.
> Q.   They knew L.H. Ross was defrauding investors left and right, right?
> A.   I don't – I guess.
> Q.   It was a matter of common – it was in the newspaper. The dude was going to Leavenworth, was he not?
> A.   Right.

LH Ross was being shut down just a few months after Sharpe and D'Amico joined it and the damage to Sharpe and D'Amico and their business was immense and immediate.

14.   Deny as stated. LH Ross took advantage of the change from "signing bonus" to "loan," that Sharpe had put in to try to gain more favorable tax treatment. (See Defendant's Exhibit G at para 31-33). The trustee for the bankrupt LH Ross claimed that the loan language was designed to protect it in the event Sharpe and D'Amico did not provide the agreed-upon services.

15.   Admit that the trustee for LH Ross sued to get the money back on this and many other bases.

16.   Denied. There are so many things wrong with this assertion it is hard to know where to begin. Plaintiffs were registered with LH Ross when we went over there. It is not known what defendant means by "the contractual provision" since there is no citation to anything. If he is referring to the March 18, 2004 letter

4

written by Sharpe, that was superseded by the "Terms Agreement" and the "OSJ Agreement." We can say that if defendant is referring to the "Terms Agreement," it does not say anything about registration being required. If the reference is to the "OSJ Agreement," (and this is the only other possible contract, para 4 (ex f) does not say that Sharpe or D'Amico themselves had any obligation to be registered. There they promised that the branch office they were to set up for LH Ross was to have a "Securities Principal" who was to be registered. And this was done. (Plaintiff's Exhibit B – Certification of Gerald Sharp). So there was no violation of the "contractual conditions." In addition, the status of Sharpe and D'Amico was "pending" in New Jersey only. He was authorized to do business in the other states and by the NASD. Any New Jersey orders for his customers were put through by the "Securities Principal" in his office. Finally, both Sharpe and D'Amico were effectively "registered." Both still had their NASD licenses and so were "effectively registered."

17.   Admit that Sharpe himself could not trade stocks for his customers while his status was "pending" (though this is not a breach of any "contractual condition", (See #16 above) but he was able to put through all trades due to his "Securities Principal" being licensed, anyway so not only was there no breach of any "contractual conditions," there was no loss either.

18.   Admit all except that it was the Trustee for LH Ross since LH Ross, due to its massive criminal law violations, was in bankruptcy.

19.   Admit.

5

20.     Deny. The "support" for this does not support this claim. Our expert Ira Starr, Esq. does not "concede" that the arbitrators could have decided this case on a particular basis. Even more important is that our expert Starr does not opine in his report as to what these individual arbitrators were thinking, nor is he an expert on what arbitrators think. Starr, a securities lawyer, opined that Robbins, a securities lawyer, breached the standard of care in his review and draftsmanship of the documents, and in his advice to his clients. If the defendant wants to prove that the case was lost for some reason other than Robbins bad legal work, he will have to do it through witnesses other than our expert who has no opinion on exactly what these arbitrators were thinking when they ruled as they did.

21.     Admit that he believes this. He does not "concede" it. (See #20 above).

22.     Denied. The legal work done constitutes malpractice for which no fee may be earned. In fact, under _Saffer v. Willoughby_, the defendants will have to disgorge the fees they have collected.

23.     Denied. Both Plaintiffs know that they do not have to pay the defendant for this work. (See #22 above).

